```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                       NORTHERN DIVISION


   _____
                                  )
   UNITED STATES OF AMERICA        )
                                   )
                                   )
        v.                         )  Criminal Docket No. WMN-97-0355
                                   )  (EXCERPT:  PRONOUNCEMENT OF
   HILTON THOMAS,                  )  SENTENCE)
           Defendant               )
   _____ )

                                      Baltimore, Maryland
                                      June 1, 2016
                                      10:16 AM to 4:41 PM

           THE ABOVE-ENTITLED MATTER CAME ON FOR
                         RE-SENTENCING
          BEFORE THE HONORABLE WILLIAM M. NICKERSON

                   A P P E A R A N C E S

   On behalf of the Government:

         Robert Harding, Assistant U.S. Attorney

   On behalf of the Defendant:

         Katherine Tang Newberger, Asst. Federal Public Defender
         Meghan Skelton, Assistant Federal Public Defender




       Proceedings recorded by mechanical stenography,
   transcript produced by computer.
   _____

           JACQUELINE SOVICH, RPR, RMR, CRR
           FEDERAL OFFICIAL COURT REPORTER
            U.S. Courthouse, Fourth Floor
              101 West Lombard Street
              Baltimore, Maryland 21201
                    410-962-4537
```

1  **EXCERPT OF PROCEEDINGS OF JUNE 1, 2016**

2      **THE COURT:** All right. There has been some loose
3  discussion with respect to a departure from the guidelines.
4  I'm going to simply bypass the issue of a departure at this
5  point. I think it will be clear in a moment that it wouldn't
6  affect the ultimate disposition in this matter.
7      It seems to me that the primary sentencing factors
8  that are being focused on are § 3553(a)(1), which there are
9  really two factors within that: nature and circumstances of
10 the offense, and Mr. Thomas' history and his personal
11 characteristics.
12     It seems as though the Defense's primary focus is on
13 Mr. Thomas' history and his characteristics, and the
14 Government's on the nature and circumstances of the offense.
15 And there is certainly considerable merit from my perspective
16 to the Government's emphasis on the horrendous nature of the
17 criminal acts underlying these charges; in particular, the
18 murder of John Jones in the presence of young children, the
19 impact on numerous victims, and the five others certainly
20 cannot be overlooked.
21     But, as to whether Mr. Thomas' crimes evidenced
22 transient immaturity, a term frankly relatively new to me, it
23 does appear that the Defense has produced considerable
24 evidence to show that Mr. Thomas' characteristics were replete
25 with youthful immaturity and developmental dysfunction and

1      warrants some consideration.
2              Ms. Reid and Dr. James' testimony are both, I find,
3      probative of the Defendant's history and character regarding
4      youthful dysfunction at the times of the crimes in question,
5      and it's very clear that Mr. Thomas had a terribly abusive and
6      neglected childhood.  Ms. Reid's testimony, if I recall it
7      correctly, was that his history shows one of the worst
8      situations that she'd ever seen.
9              My own observations -- Ms. Newberger alluded to this
10     in her argument, indicated back in 1999 gross immaturity on
11     Mr. Thomas' part in failing or being unable to recognize his
12     exposure to a life sentence, coupled I think with a childlike
13     pride in following his hero, Jerry Williams, to trial and
14     being unable to comprehend the inevitable conclusion of a
15     conviction and a heavy penalty.  It's simply a clear inability
16     to comprehend the risk and, to me, a mark of transient
17     immaturity.
18             I think there is considerable merit in Dr. James'
19     testimony as well as Ms. Reid's testimony that Mr. Thomas has
20     undergone some change for the positive, and what they
21     testified to supports the conclusions that Ms. Newberger
22     reached in her memorandum that the last eight years have shown
23     some substantial changes in Mr. Thomas' maturity and his
24     ability to recognize responsibility, and the mere fact of his
25     transfer to a minimum-security prison and some positive

1    reports from a chaplain there seem to confirm that.
2           The Government's apparent claim that Mr. Thomas is
3    as dangerous today as he was in 1999 seems to me to be
4    factually flawed.  I think Mr. Thomas' egregious acts back
5    then were performed primarily as a role player in my
6    understanding, and I think there is some merit to
7    Mr. Harding's argument that he, in some respects, was
8    something of a leader, but it seems to me the inescapable fact
9    is that his activities were essentially carried out within the
10   organization of the drug-dealing business, and the likelihood
11   of him returning to that milieu is, to me, extremely unlikely.
12          I do agree with much of the Government's assessment
13   of Mr. Thomas' character in regard to his not having been
14   remorseful or truly accepting of his antisocial and criminal
15   tendencies, but there does appear to be this significant
16   change over the last eight years.
17          In regard to the protection of the public,
18   Mr. Thomas' acts, as horrendous as they were, simply were not
19   perpetrated on the general public.  His behavior, as I
20   indicated, was all within this milieu of a warring drug or
21   drug organizations, and, as I said, very unlikely that his
22   return would put him back into any kind of situation like
23   that.
24          It seems the basic question is whether Mr. Thomas'
25   responsibility for his criminal conduct is mitigated because

1   of his adolescence and some related impairment of his
2   cognitive functioning, and my conclusion with respect to that,
3   based on all the evidence that I have heard and bearing on the
4   sentencing factors, is that Mr. Thomas, by virtue of his
5   adolescence and his particularly serious cognitive impairment,
6   which I think was due both to his immaturity by age but was
7   exacerbated by the staggeringly dysfunctional upbringing by
8   parents that were so grossly incompetent it's beyond
9   comprehension, and the terrible atmosphere in which he had to
10  function in a drug-infested neighborhood, I think all of that
11  warrants consideration in an appropriate sentence.
12          If Mr. Thomas had been 14 or 15, I would conclude
13  that his impairment due to immaturity and cognitive ability or
14  disability might warrant the 30 years that is now being
15  advanced by the Defense as the appropriate sentence.  At age
16  17, it's a different situation, and I think there is a lot of
17  merit in Mr. Harding's argument with regard to the
18  proportionality concern, so that a sentence of 30 years given
19  those things would be a concern to me, as well as a basic
20  concern that I have with this entire concept where the Supreme
21  Court seems to be drawing a bright line between sentencing
22  somebody who is maybe 17 and a half and somebody who is 18.
23  But I am convinced, contrary to Mr. Harding's argument, that
24  Mr. Thomas was more of a follower than a leader, all things
25  considered.

1           The bottom line of all of this is that, in my view,
2   the appropriate sentence in this matter is a sentence of 480
3   months, 40 years, as to Count 2, and a like sentence as to
4   Count 4, running concurrently with the sentence in Count 2 and
5   with the original sentences in Counts 1 and 3, and the same
6   term of supervised release that was ordered in 1999, and the
7   same conditions.
8           Mr. Thomas, as before, you have a right of appeal in
9   regard to this matter, and I'm sure Ms. Newberger will counsel
10  you with respect to that, but, if you take an appeal, it's
11  going to have to be entered within ten days' time.
12          Harkening back for a second as to the departure in
13  this matter, I can only say, if a departure were granted, the
14  result would be the same.
15          So, counsel, if there are any questions or anything
16  you want to add to the record, I'll be glad to hear from you.
17          **MR. HARDING:**  No, thank you, Your Honor.
18          **THE COURT:**  Ms. Newberger?
19          **MS. NEWBERGER:**  Your Honor, for -- if Your Honor was
20  willing to do so, for clarity, in the line where it imposes
21  the sentence, if, in addition to the statement regarding
22  Count 2 and Count 4 running concurrently, if it can also --
23          **THE COURT:**  I'm sorry.  Say it again.
24          **MS. NEWBERGER:**  I'm sorry, Your Honor.
25          If it could indicate that -- and I think that this

```
 1    would be implicit, but this is an unusual circumstance of a
 2    resentencing this late.  If it could state that with credit
 3    for time served since October 15th of 1997, which was the date
 4    that he was taken into custody as reflected in the presentence
 5    report.
 6            **THE COURT:**  Well, it's not up to me to make the
 7    determination as to what the appropriate credit is.  That
 8    sounds like it's correct to me, but it's ultimately up to the
 9    Bureau of Prisons to make that determination.
10            All right.  Thank you, counsel.  Good job.
11            **THE CLERK:**  All rise.  This Honorable Court stands
12    in recess.
13            (Recess.)
14            **THE COURT:**  Counsel, as I think we're all aware at
15    the moment, I misspoke with regard to the sentence as to
16    Count 4, because it has a statutory maximum of 20 years, and
17    so the sentence as to Count 4 should be noted as a sentence of
18    20 years.
19            **MS. NEWBERGER:**  Your Honor, Ms. Swillo pointed out
20    that the statutory maximum period of supervised release on
21    Count 4 is three years and not five years, so, although it
22    will run concurrent with the five-year supervised release term
23    on Count 2, it does technically need to be three years of
24    supervised release on Count 4.
25            **THE COURT:**  All right.  Supervised release will be
```

1  noted as -- did you say three years is the maximum --
2           **MS. NEWBERGER:**  Three years, yes.
3           **THE COURT:**  -- for Count 4?
4           **PROBATION OFFICER:**  Yes, Your Honor.
5           **THE COURT:**  All right.  Three years, running
6  concurrently to Count 2, and the same conditions.
7           Anything else for the record?
8           **MR. HARDING:**  No, thank you, Your Honor.
9           **MS. NEWBERGER:**  No, thank you, Your Honor.
10          **THE COURT:**  Thank you, counsel.
11          **THE CLERK:**  All rise.
12      (Recess.)
13
14     I, Martin J. Giordano, RMR, CRR, Official Court
15  Reporter, do hereby certify that the foregoing is a true and
16  accurate transcript from the stenographic record of
17  proceedings in the above-captioned matter, as reported by
18  Jacqueline Sovich, Official Court Reporter.
19
20
21                      Dated this 30th day of April 2017.
22
23                      _Martin J. Giordano_____
24                      MARTIN J. GIORDANO, RMR, CRR
25                      FEDERAL OFFICIAL COURT REPORTER