IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO.  JKB-97-0355-3 |
| | | FILED UNDER SEAL |
| HILTON THOMAS, | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM AND ORDER

Pending before the Court is Hilton Thomas's Motion for Compassionate Release. (ECF No. 536.) In 1999, Thomas was sentenced to life in prison after a jury found him guilty of murder, conspiracy to murder in aid of racketeering, conspiracy to retaliate against a witness, and conspiracy to distribute narcotics. (ECF No. 193.)   These convictions stemmed from his involvement with a violent drug operation in East Baltimore led by Anthony Jones, who ordered then-seventeen-year-old Thomas to murder John Jones after John Jones testified in a federal drug case. (Mem. Supp. Mot. Compassionate Release, ECF No. 539; Presentence R. & R. ¶ 5.) In 2016, Thomas's life sentence was vacated and he was resentenced to 480 months[1] of incarceration (ECF No. 466) after the Supreme Court decided *Miller v. Alabama*, which deemed mandatory life sentences without parole unconstitutional when imposed on juvenile offenders. 567 U.S. 460 (2012). In August of 2021, this Court granted Thomas's first Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), (ECF No. 491), reducing his sentence to 420 months after

---

[1] Thomas was initially sentenced to life for murder and conspiracy to distribute narcotics, 120 months for conspiracy to murder, and 60 months for conspiracy to retaliate. (ECF No. 193.) At resentencing, he received sentences of 480 months for his murder conviction and 240 months for his narcotics conviction to run concurrently with his lesser sentences, which remained unchanged. (ECF No. 466.)

considering Thomas's youth at the time of his crimes, his "excessively long sentence" compared to the national average for murder, his "unusually difficult personal history," and his "notable personal improvements" since conviction. (ECF No. 520.) In December of 2021, Thomas filed the instant *pro se* Motion for Compassionate Release. (ECF No. 536.) This Motion was later supplemented by counsel. (ECF No. 539.) Thomas now seeks a further sentence reduction to 360 months, pointing out that two Anthony Jones organization co-conspirators with similar convictions, Alan Vincent Chapman and Warren Devon Hill, recently received reductions to 360 months. (*Id.*); *United States v. Chapman*, Crim. No. GLR-96-0458, ECF No. 1300 (D. Md. Nov. 3, 2021); *United States v. Hill*, Crim. No. GLR-96-0458, ECF No. 1303 (D. Md. Nov. 10, 2021). The Motion is fully briefed and no hearing is necessary. *See* Local Rules 105.6, 207 (D. Md. 2021). For the reasons set forth below, the Court will DENY Thomas's Motion.

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1)(A). Under this section, a district court may modify a sentence imposed after conviction when "extraordinary and compelling reasons warrant such a reduction" and the court has "consider[ed] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). A defendant may move for compassionate release only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Thomas satisfied the administrative exhaustion requirement by filing a request for a sentence reduction with the warden of FCI Berlin, which was denied on November 18, 2021. (ECF No. 536-1.) The Court must therefore determine (1) whether Thomas has established the existence of "extraordinary and compelling reasons" for a second sentence reduction under § 3582(c)(1)(A),

2

and (2) if so, whether granting compassionate release is consistent with the factors set forth in 18 U.S.C. § 3553(a).

## I.    *Extraordinary and Compelling Reasons*

The United States Sentencing Commission, pursuant to its mandate under 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction," has stated that such reasons exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant with deteriorating health is at least sixty-five years old and has served ten years or 75% of their term of imprisonment; (3) certain family circumstances arise in which a defendant must serve as a caregiver for minor children or a partner; or (4) the Bureau of Prisons ("BOP") determines other circumstances create "extraordinary and compelling reasons" for sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1 (A)–(D). Following the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which "removed the BOP from [its] gatekeeping role," the Court of Appeals for the Fourth Circuit has affirmed that "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 274, 284 (4th Cir. 2020) (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Courts in this District have held that a disparity between a defendant's sentence and those of his co-defendants[2] may qualify as an extraordinary and compelling reason for compassionate release. *See, e.g., United States v. Stockton*, Crim. No. ELH-99-0352, 2021 WL 1060347 (D. Md. Mar. 17, 2021); *United States v. Payton*, Crim No. PJM-06-0341, 2021 WL 927631 (D. Md. Mar. 11, 2021). However, because sentencing is an individualized process, sentencing disparities

---

[2] The co-conspirators whose reduced sentences Thomas cites in support of this Motion were not tried as his co-defendants in the instant case, but their convictions stemmed from the same overarching racketeering conspiracy led by Anthony Jones. (*See generally* Docket Nos. JKB-97-0355, GLR-96-0458.) The Court will therefore compare their sentences to Thomas's as if they were co-defendants.

between co-conspirators are "expected and appropriate" where all members of the conspiracy are not "similarly situated." *United States v. Smith*, 836 F. App'x 149, 153 (4th Cir. 2020). Therefore, the question of whether such a sentencing disparity constitutes an extraordinary and compelling reason warranting compassionate release is an individualized and fact-specific inquiry.

Comparing the underlying facts of Thomas's conviction with those of co-conspirators Chapman and Hill, the Court finds that Thomas is not similarly situated for one significant reason: Thomas's murder conviction is based on his role in retaliating against a witness. At Thomas's trial, the Government presented evidence that Anthony Jones, while incarcerated, "instructed [co-conspirator] Jerry Williams to arrange for the murder of Anthony's brother by adoption, John Jones, in retaliation for [his] testimony in a federal grand jury," and that Williams "recruited Thomas" and another co-conspirator "to do the shooting." (Presentence R. & R. ¶ 5.) Thomas then went to John Jones's home and "fired three rounds into the back of [his] head[,]" killing him. (*Id.* ¶ 6.) In contrast, although Chapman and Hill were found guilty of murder in aid of the Anthony Jones conspiracy, there was no evidence that either man murdered or conspired to retaliate against a witness. *See United States v. Jett*, 18 F. App'x 224, 230 (4th Cir. 2001) (describing Chapman's and Hill's involvement in the Jones conspiracy). Further, while Chapman's and Hill's convictions are *nearly* identical to Thomas's—both were convicted of murder in aid of racketeering, attempted murder in aid of racketeering, conspiracy to murder in aid of racketeering, and conspiracy to distribute narcotics—only Thomas was convicted of conspiracy to retaliate under the Victim and Witness Protection Act of 1982, 18 U.S.C. § 1513(a). (*See* Docket Nos. JKB-97-0355-3, GLR-96-0458-4, GLR 96-0458-5.)

The fact that retaliation against witnesses is a federal felony underscores the gravity of the offense. The tremendous harm caused by retaliation "goes beyond the injuries suffered by the

individuals themselves: the integrity of the court's process and proceedings suffers the inevitable and intolerable destruction that accompanies" such conduct. *Equal Emp. Opportunity Comm'n v. Loc. 14 and 15, Int'l Union of Operating Eng'rs*, 438 F. Supp. 876, 879 (S.D.N.Y. 1977). As a court in this District recently noted, "[w]itness tampering of any sort, at any juncture in litigation, prejudices the judicial process. Furthermore, allowing this type of behavior would significantly damage [the] public interest, as it would undermine the integrity of the judicial process and perhaps encourage others to apply similarly improper measures in their own cases." *Johnson v. Baltimore Police Dep't*, Civ. No. ELH-19-0698, 2022 WL 9976525, at *39 (D. Md. Oct. 14, 2022).

It is imperative that the judiciary protect its capacity to deliver justice without fear or favor. Accordingly, it is appropriate for a defendant who was convicted of murdering and conspiring to murder a witness to receive a longer sentence than an otherwise similarly situated co-conspirator who did not retaliate against a witness. The Court thus concludes that under these circumstances, the five-year disparity between Thomas's sentence and those of Chapman and Hill does not constitute an extraordinary and compelling reason warranting a further reduction in Thomas's sentence.

## II.    Section 3553(a) Factors

Even assuming the co-conspirator sentencing disparity were an extraordinary and compelling reason warranting relief in this case, an application of the § 3553(a) sentencing factors to Thomas's unique circumstances does not justify a further reduction in sentence from 420 to 360 months.

18 U.S.C. § 3553(a) states that courts shall consider a variety of factors when imposing a sentence, including:

> (1) [Defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just

punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.

*United States v. Bryant*, Crim. No. CCB-95-0202, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020).

In support of his Motion, Thomas relies on many of the same mitigating factors—his deeply difficult upbringing, his minor status at the time of his crimes, his subsequent personal improvements, and his developing health problems—that persuaded this Court only a year ago to reduce his sentence from 480 to 420 months after a thorough § 3553(a) analysis. (*See* Mem. & Order, ECF No. 520, at 5–8.) He argues that the intervening sentence reductions of co-conspirators Chapman and Hill cast his current sentence in a new light because his "longer sentence than members of the conspiracy who were adults at the time of their participation" cannot be justified under the circumstances of his case. (ECF No. 539 at 14); *see United States v. Graham*, No. 21-6613, 2022 WL 1172169, at *2 (4th Cir. Apr. 20, 2022) (acknowledging that "alleged sentencing disparity between [defendant] and his co-defendants" is a legitimate mitigating factor under § 3553(a)).

The Court disagrees with Thomas for the same reason that it did not find an extraordinary and compelling reason warranting compassionate release: unlike Chapman and Hill, Thomas was convicted of murdering a witness. While the Court acknowledges the sentence reductions received by Chapman and Hill, these sentences do not factor significantly into its determination of the appropriate sentence for Thomas based on the unique facts of his case. As discussed in detail above, the retaliatory murder of a witness constitutes an attack not only on public safety, but also on the judicial process. A severe sentence—one of 420 months even though the offender was a juvenile at the time—is warranted to express society's abhorrence of crimes designed to frustrate

6

the very operation of the justice process. The sentence is entirely justified on grounds of general deterrence.

Accordingly, while the Court continues to credit the mitigating factors that persuaded it on review of Thomas's first Motion for Compassionate Release, (*see* ECF No. 520), it concludes here that those factors are outweighed by the need to deter witness retaliation and to underscore the seriousness of such conduct. Thus, despite Thomas's youth at the time of the crime, it is appropriate that he receive a longer sentence than his adult co-conspirators who did not retaliate.

### III.   Conclusion

For the foregoing reasons, it is hereby ORDERED:

Defendant Hilton Thomas's Motion for Compassionate Release (ECF No. 539) is DENIED.


DATED this ___5___ day of November, 2022.


BY THE COURT:


James K. Bredar
Chief Judge